IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

    v.

IRVIN HUDSON,
    *Defendant*.

Criminal No. ELH-19-173

**MEMORANDUM OPINION**

    A grand jury in the District of Maryland indicted defendant Irvin Hudson on April 3, 2019, charging him with one count of possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1). ECF 1. A Superseding Information was filed on October 17, 2019, charging the defendant with possession of a stolen firearm, under 18 U.S.C. § 922(j).[1] ECF 25. And, on November 6, 2019, the defendant entered a plea of guilty to the Superseding Information. ECF 34. The plea was tendered pursuant to a Plea Agreement. *See* ECF 30 (Plea Agreement).

    Notably, the plea was entered under Fed. R. Crim. P. 11(c)(1)(C), by which the parties stipulated to a sentence of 120 months of imprisonment as the appropriate disposition of the case. *See id*. ¶ 9. That corresponded to the statutory maximum for the offense. *Id.* ¶ 3.

    Sentencing was held on January 17, 2020. ECF 37. At that time, the Court imposed the agreed upon sentence of 120 months' imprisonment, with credit for time served beginning November 30, 2018. ECF 38 (Judgment).

---

[1] As discussed, *infra*, the stolen firearm offense enabled the defendant to avoid designation as an armed career criminal, with a corresponding mandatory minimum sentence of 15 years of incarceration. *See* 18 U.S.C. § 924(e)(1).

Thereafter, on August 11, 2022, the defendant filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF 48. He also submitted exhibits. ECF 48-1; ECF 48-2. And, Mr. Hudson wrote to the Court on November 17, 2022, seeking to enter a drug treatment program. ECF 58. I shall consider ECF 48 and ECF 58 collectively as the "Motion."

In the Motion, Hudson asks the Court to appoint counsel for him. ECF 48 at 3. The Office of the Federal Public Defender has declined to represent Mr. Hudson. ECF 50.

The government opposes the defendant's motion. ECF 59. The defendant has replied. ECF 62. He also submitted additional exhibits. ECF 62-1 to ECF 62-3

Defendant is currently incarcerated at Hazelton FCI. *Find an inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last visited May 8, 2023). Defendant has served about 68 months of his 120-month sentence, or approximately 57% of his sentence. The Bureau of Prisons ("BOP") indicates that he has a projected release date of September 29, 2027.

No hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion, without prejudice.

## I. Factual Background

As noted, the defendant entered a plea of guilty to a Superseding Information charging him with possession of a stolen weapon. The Plea Agreement (ECF 30) contained the parties' Stipulation of Facts. *Id.* at 10-11. According to the Stipulation, the Baltimore Police Department ("BPD") responded to an armed carjacking on the afternoon of November 30, 2018. The victims recounted that an unknown male had approached the driver of the vehicle at a gas station and pointed a handgun at him. The carjacker directed the female passenger to exit the vehicle, and then took the driver's keys and fled in the vehicle. *Id.* at 10.

2

Later that day, the BPD received information as to the location of the carjacked vehicle. The BPD helicopter, known as "Foxtrot," responded. Both the driver and a front passenger exited the vehicle and fled in different directions. *Id.*

The passenger who fled was identified as defendant Irvin Hudson. *Id.* Officers in Foxtrot saw Hudson discard a firearm. It was recovered and determined to be a Glock Model 19 semi-automatic pistol containing a 9 mm cartridge in the chamber. *Id.* The magazine was found next to the passenger side door of the carjacked vehicle from which the defendant had exited. The magazine was loaded with four nine millimeter cartridges. *Id.* Moreover, the firearm was stolen. *Id.*

The Presentence Report ("PSR"), dated January 8, 2020, is docketed at ECF 35. It reflects a final offense level of 23 (*id.* ¶ 26), and a criminal history score of nine points. Notably, the underlying offense was committed while the defendant was on parole for the offenses referenced in ¶¶ 38 and 39 of the PSR. As a result, two points were added, resulting in a score of eleven points. *See* § 4A1.1(d) of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G."). This equated to a criminal history category of V. *Id.* ¶ 42.

At the time of sentencing on January 17, 2020 (ECF 37), the defendant, born in September 1988, was 31 years of age. ECF 35 at 3. He had neither a high school diploma nor a GED. *Id*. He had a long history of substance abuse. *Id*. ¶¶ 64-66. In addition, the PSR reflected a long and serious prior record. Several offenses did not score points, however.

According to the PSR, the defendant committed a robbery at the age of 16 and was committed to the Department of Juvenile Services. His record also included several drug offenses. For example, the defendant was convicted in 2007 of possession with intent to distribute. Although

the defendant received a five-year sentence, almost all of it was suspended. He was 18 years of age at the time. *Id.* ¶ 35.

In 2008, the defendant was convicted of distribution of cocaine, for which he received a two-year sentence. *Id.* ¶ 37. In 2010, the defendant pled guilty to distribution of heroin. *Id.* ¶ 38. He received a sentence of 23 years, almost all of which was suspended, in favor of five years' probation. However, the defendant violated his probation and was sentenced in April 2013 to fourteen years of incarceration. *Id.* The defendant also pled guilty to the charge of distribution of cocaine. He received a concurrent sentence of fourteen years. *Id.* ¶ 39.

With a final offense level of 23 and a criminal history category of V, the defendant's advisory sentencing Guidelines called for a period of incarceration ranging from 84 months to 105 months. *Id.* ¶ 73. Notably, the Guidelines range is less than the sentence contemplated by the terms of the C Plea. However, in the context of this case, the Guidelines do not tell the whole story.

As the Court explained to the defendant at sentencing, it appears that, if the defendant had been convicted of the original charge, *i.e.*, being a felon in possession of a firearm, he would have qualified as an armed career criminal. ECF 59-1 at 7. And, if he were so designated, then, by law, the Court would have been required to impose a sentence of at least 15 years of incarceration, with a potential sentence up to life imprisonment. *Id.*; *see* 18 U.S.C. § 924(e). Pursuant to plea negotiations, however, the defendant was able to avoid that exposure. Instead, he pled to an offense with a maximum exposure of ten years of incarceration and, pursuant to the C Plea, that is

4

the sentence to which the parties agreed.²

Defendant now asks the Court to modify his sentence to allow him to enter a drug treatment program. He asserts that he "has suffered drug problems almost his entire adult life and would like to take Drug Treatment, but the Problems in the BOP has rendered that impossible . . . ." ECF 48 at 1. Further, defendant also states that he "is not asking to be released." *Id.* at 2; *see also* ECF 58 at 1. Mr. Hudson asserts that he "is not a threat to anyone . . . ." ECF 48 at 2. But, he claims that he is "a perfect candidate" for drug treatment. *Id*. at 3. And, he claims that the BOP falls woefully short in addressing inmates' drug problems.

In its opposition, the government asserts that defendant's "alleged inability to obtain drug abuse treatment services does not rise to the level of 'extraordinary and compelling' reason for compassionate release." ECF 59 at 1. Moreover, the government contends that, based on the serious nature of the offense and the defendant's prior record, the sentence was reasonable and warranted. *Id.* The government does not contest that defendant has exhausted his administrative remedies.

In reply, Mr. Hudson complains about the prevalence of drugs in the BOP. ECF 62. Moreover, he acknowledges that the government was "very lenient" with him. *Id*. at 1. But, he explains that he is merely asking for help, and claims that he should get help in a manner that is beneficial.

In support of his reply, the defendant has submitted a letter from a fellow inmate. ECF 62-1. The inmate agrees that the defendant's sentence was "very fair." *Id*. at 1. Indeed, he

---

² In ECF 58, Hudson suggests that his plea to ten years "may have been excessive because [his] case manager indicated" that the Guidelines were less than the agreed upon sentence. ECF 58 at 1. But, the Court has every confidence that defendant fully understood that the ten year C Plea term reflected a sentence significantly below that which the Court would have been required to impose if he had been convicted of the original offense with which he was charged

characterizes the government as "gracious" in regard to the defendant. But, he points to the defendant's serious need for help, which is unavailable to him at the BOP.

Additional facts are discussed, *infra*.

## II. Appointment of Counsel

As mentioned, Hudson asks the Court to appoint counsel for him to assist in litigating the Motion. ECF 48 at 3. But, there is no constitutional right to appointed counsel in post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("The right to appointed counsel extends to the first appeal of right, and no further."). Rather, the determination to appoint counsel rests solely within the discretion of the district court. *See United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) (explaining that a district court has the discretion to appoint defendant counsel under 18 U.S.C. § 3582(c) in exceptional circumstances); *see*, *e.g.*, *Bowman v. White*, 388 F.2d 756, 761 (4th Cir. 1968).

By analogy, a court may appoint counsel to represent a financially eligible petitioner in a § 2255 proceeding, when the interests of justice so require. *Paris v. United States*, 191 F. Supp. 3d 559, 562 (E.D. Va. 2016) (citing 18 U.S.C. § 3006A(a)(2)(B)). In general, Hudson has ably demonstrated the ability to articulate the legal and factual basis of his claims. And, a review of defendant's case does not reveal any unusual or exceptional circumstances that would warrant the appointment of counsel.

For the reasons set forth above, I shall deny defendant's request for counsel, without prejudice.

## III. Standard of Review

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States*

6

*v. Bond*, 56 F. 4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson,* 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Congress "broadened" the authority of the courts in 2018, with passage of the First Step Act ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018) (codified as 18 U.S.C. § 3582(c)(1)(A)). *Malone*, 57 F.4th at 173. Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence if "extraordinary and compelling reasons warrant such a reduction." *Hargrove*, 30 F.4th at 194. This provision is an exception to the ordinary rule of finality in regard to a federal sentence. *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).

Section 3582 was first enacted as part of the Sentencing Reform Act of 1984. Originally, it permitted a court to alter a sentence only upon a motion by the Director of the BOP. *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). Thus, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Bethea*, 54 F.4th at 831; *see*, *e.g*., *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying compassionate release motion because § 3582 "vests absolute discretion" in the BOP).

For many years, the safety valve of § 3582 languished. The BOP rarely filed motions on an inmate's behalf. As a result, compassionate release was exceedingly rare. *See Hearing on*

*Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

As a result of the enactment of the FSA in December 2018, a federal inmate is now permitted to file a motion for compassionate release directly with the court after exhaustion of administrative remedies. *See United States v. McCoy*, 981 F.3d 271, 275-76 (4th Cir. 2020). Specifically, pursuant to the 2018 FSA, the Court may reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights* to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. *Id.* (emphasis added).

Once a defendant has exhausted his administrative remedies, or after 30 days have passed from the date on which the warden received the defendant's request, the defendant may petition a court directly for compassionate release. *Ferguson*, 55 F.4th at 268; *Jenkins*, 22 F.4th at 169; *United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021); *McCoy*, 981 F.3d at 276. This constituted a sea change in the law.

But, under 18 U.S.C. § 3582(c)(1)(A), the court may modify the defendant's sentence only if two criteria are met. *Bethea*, 54 F.4th at 831. In other words, the analysis consists of "two steps." *Bond*, 56 F.4th at 383. And, for a court to award compassionate release, it must conclude that the movant satisfies both criteria. *Bethea*, 54 F. 4th at 831; *see Hargrove*, 30 F.4th at 194-95.

"First, the court must determine the prisoner is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' supporting relief." *Bethea*, 54 F.4th at 831 (citation omitted); *see also Bond*, 56 F.4th at 383; *United States v. Kibble*, 992 F.3d 326, 330 (4th

Cir. 2021) (per curiam), *cert. denied*, ___ U.S. ___, 142 S. Ct. 383 (2021). If that criteria is met, the court "must then find that release is appropriate under the 18 U.S.C. § 3553(a) sentencing factors, to the extent those factors are applicable." *Bethea*, 54 F.4th at 831; *see also Malone*, 57 F.4th at 174; *Hargrove*, 30 F.4th at 194; *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021); *Kibble*, 992 F.3d at 330.

Generally, "the district court enjoys broad discretion in conducting a § 3582(c)(1)(A) analysis." *Jenkins*, 22 F.4th at 169. But, the Fourth Circuit has said: "When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court may grant a reduction only if it is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Taylor*, 820 F. App'x 229, 230 (4th Cir. 2020) (per curiam) (citing 18 U.S.C. § 3582(c)(1)(A)).

In U.S.S.G. § 1B1.13, titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement," the Sentencing Commission addressed the "extraordinary and compelling reasons" that might merit compassionate release. *See McCoy,* 981 F.3d at 276-77.[3] In particular, U.S.S.G. § 1B1.13 provides that on motion by the Director of the BOP, the court may reduce a sentence where warranted by extraordinary or compelling reasons (§ 1B1.13(1)(A)); the defendant is at least 70 years old and has served at least 30 years in prison (§ 1B1.13(1)(B)); the defendant is not a danger to the safety of any other person or to the community (§ 1B1.13(2)); and the reduction is consistent with the policy statement. U.S.S.G. § 1B1.13(3).

The Application Notes to U.S.S.G. § 1B1.13 are expansive and indicate that compassionate release may be based on circumstances involving illness, declining health, age, exceptional family

---

[3] The Sentencing Commission acted pursuant to 28 U.S.C. § 994(t) (directing Sentencing Commission to "describe what should be extraordinary and compelling reasons for sentence reduction"), as well as 28 U.S.C. § 994(a)(2)(C). *See McCoy,* 981 F.3d at 276.

circumstances, as well as "other reasons." U.S.S.G. § 1B1.13 App. Notes 1(A)-(D). Application Note 1(D), titled "Other Reasons," permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D). This is the "so-called, 'catch-all' category." *McCoy*, 981 F.3d at 276.

However, as the Fourth Circuit has recognized, there is no applicable policy statement for a motion filed by a defendant under § 3582(c)(1)(A). *See*, *e.g.*, *Malone*, 57 F.4th at 174; *McCoy*, 981 F.3d at 276. Of significance here, the policy statement in U.S.S.G. § 1B1.13 was issued in 2006 and was last updated in November 2018, *prior* to the enactment of the FSA. It is *only* "directed at BOP requests for sentence reductions." *McCoy*, 981 F.3d at 276 (citing U.S.S.G. § 1B1.13). Thus, "[b]y its plain terms. . . § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)." *McCoy*, 981 F.3d at 282; *see also Jenkins*, 22 F.4th at 169; *United States v. Brooker,* 976 F.3d 228, 235-36 (2nd Cir. 2020); *United States v. Jones*, 980 F.3d 1098, 1100-02 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

Notably, "Section 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release." *McCoy*, 981 F.3d at 276. And, because there is currently no Sentencing Commission policy statement applicable to a defendant's compassionate release motion, "district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to [U.S.S.G.] § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *McCoy*, 981 F.3d at 283; *see also Hargrove*, 30 F.4th at 194-95; *United States v. Brice*, 2022 WL 3715086, at *1 (4th Cir. Aug. 29, 2022) (per curiam). Although there are currently no applicable policy statements for the Sentencing

Commission that are applicable to compassionate release., U.S.S.G. § 1B1.13 "remains helpful guidance . . . ." *McCoy*, 981 F.3d at 282 n.7; *see Hargrove*, 30 F.4th at 194. Consequently, district courts are "'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (citation omitted); *see also Jenkins*, 22 F.4th at 170.

"The factors applicable to the determination of what circumstances can constitute an extraordinary and compelling reason for release from prison are complex and not easily summarized." *Hargrove*, 30 F.4th at 197. But, "successful rehabilitation efforts can be considered" in regard to the analysis of extraordinary and compelling reasons. *United States v. Harris*, 2022 WL 636627, at *1 (4th Cir. Mar. 4, 2022) (per curiam); *see United States v. Gutierrez*, ___ Fed. App'x ___, 2023 WL 245001, at *4 (4th Cir. Jan. 18, 2023) (stating that, in considering motion for compassionate release, district court erred by failing to address defendant's evidence of rehabilitation). Nevertheless, "rehabilitation alone cannot serve as a basis for compassionate release." *United States v. Davis*, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (per curiam); *see McCoy*, 981 F.3d at 286 n.9; *Harris*, 2022 WL 636627, at *1; 28 U.S.C. § 994(t). Moreover, "[i]n deciding a motion for compassionate release, the district court is confined to the evidence presented." *Bethea*, 54 F.4th at 833 n.2; *see also United States v. Osman*, 2022 WL 485183, at *1 (4th Cir. Feb. 17, 2022).

The Guidelines "are not directly applicable to defendant-filed motions" under § 3582(c). *Jenkins*, 22 F.4th at 169. However, "the court may consider these guidelines in defining what should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." *Id.* (citing U.S.S.G. § 1B1.13); *see High*, 997 F.3d at 187.

11

Of relevance here, the Supreme Court decided *Concepcion v. United States*, ___ U.S. ___, 142 S. Ct. 2389 (2022), on June 27, 2022.  In that case, the Supreme Court said, in the context of § 404(b) of the First Step Act, that "a district court cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act [of 2010] . . . ." *Id.* at 2402 n.6.  The Court explained that the "Guidelines range 'anchor[s]' the sentencing proceeding . . . .  The district court may then consider postsentencing conduct or nonretroactive changes . . . with the properly calculated Guidelines range as the benchmark." *Id.* (first alteration in original; internal citation omitted); *see also United States v. Troy*, 64 F.4th 177, 183-84 (4th Cir. 2023).

To be sure, the district court is obligated to consider all non-frivolous arguments for sentence reduction based on intervening changes in the law and factual developments. *Concepcion*, 142 S. Ct. at 2396; *Troy,* 64 F.4th at 184; *United States v. Reed*, 58 F.4th 816, 822 (4th Cir. 2023); *Brice*, 2022 WL 3715086, at *2.  However, such changes do not warrant a recalculation of the Guidelines.  *Troy*, 64 F.4th at 184.

As the movant, the defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582.  *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).  And, compassionate release is a "rare" remedy.  *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *see Chambliss*, 948 F.3d at 693-94; *United States v. Mangarella*, FDW-06-151, 2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020).

As explained, even if the defendant establishes an extraordinary and compelling reason that renders him eligible for a sentence reduction, that does not end the inquiry.  The second step requires the court to consider the factors under 18 U.S.C. § 3553(a) to determine whether, in its

discretion, a reduction of sentence is appropriate. *See Dillon v. United States*, 560 U.S. 817, 826-27 (2010); *United States v. Mangarella*, 57 F.4th 197, 200, 203 (4th Cir. 2023); *Malone*, 57 F.4th at 174; *Bethea*, 54 F.4th at 833; *Hargrove*, 30 F.4th at 195; *High*, 997 F.3d at 186; *Martin*, 916 F.3d at 397; *see also United States v. Jones*, 2022 WL 2303960, at *1 (4th Cir. June 27, 2022) (per curiam) (noting that "a court need not explicitly make findings on extraordinary and compelling reasons where consideration of the § 3553(a) factors counsels against release"); *United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam) (noting that, even if the district court finds extraordinary and compelling circumstances, it must consider the § 3553(a) factors to the extent applicable in exercising its discretion); *Kibble*, 992 F.3d at 329-30 (noting that district court must consider § 3553(a) factors when considering a motion to reduce sentence under § 3582(c)(1)(A) and district court enjoys broad discretion in conducting this analysis); *United States v. Trotman*, 829 F. App'x 607, 608 (4th Cir. 2020) (per curiam) (recognizing that, when considering a motion to reduce sentence under § 3582(c)(1)(A), the court must consider the sentencing factors under § 3553(a), to the extent applicable); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020) (district court must give due consideration to the § 3553(a) factors).

As the Fourth Circuit has observed "'many case-specific facts fit under the broad umbrella of the Section 3553(a) factors.'" *Bond*, 56 F.4th at 384 (quoting *United States v. Jackson*, 952 F.3d 492, 500 (4th Cir. 2020)). And, in weighing the § 3553(a) factors, the court may consider the terms of a plea bargain. *Bond*, 56 F.4th at 384-85.

Notably, "[a] district court need not provide an exhaustive explanation analyzing every § 3553(a) factor," nor is it "required to address each of a defendant's arguments when it considers a motion for compassionate release." *Jenkins*, 22 F.4th at 170; *see Chavez-Mena v. United States*, ___ U.S. ___, 138 S. Ct. 1959 (2018); *High*, 997 F.3d at 187. But, a district court abuses its

discretion when it "act[s] arbitrarily or irrationally," "fail[s] to consider judicially recognized factors constraining its exercise of discretion," "relie[s] on erroneous factual or legal premises," or "commit[s] an error of law." *High*, 997 F.3d at 187 (internal quotation marks omitted); *see Jenkins*, 22 F.4th at 167. And, "'the record as a whole'" must demonstrate that the judge considered the parties' contention, and had "'a reasoned basis'" for the exercise of his or her discretion. *Malone*, 57 F.4th at 176 (citations omitted); *see also United States v. Puzey*, 2023 WL 2985127, at *2 (4th Cir. Apr. 18, 2023) (per curiam).

Moreover, where appropriate, the district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *Mangarella*, 57 F.4th at 203; *see Martin*, 916 F.3d at 397; *Kibble*, 992 F.3d at 334 n. 3. That said, "[h]ow much explanation is 'enough' depends on the complexity of a given case." *Gutierrez*, 2023 WL 245001, at *3; *see United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021).

Of relevance here, "it weighs against an abuse of discretion—and is viewed as 'significant'—when the same judge who sentenced the defendant rules on the compassionate release motion." *Bethea*, 54 F.4th at 834; *see Gutierrez*, 2023 WL 245001, at *5; *Hargrove*, 30 F.4th at 200; *High*, 997 F.3d at 189. Moreover, "the district court is less likely to have abused its discretion if it considered arguments in opposition to its ultimate decision." *Bethea*, 54 F.4th at 834; *see also High*, 997 F.3d at 189; *Kibble*, 992 F.3d at 332.

In any event, "the court must provide an explanation sufficient 'to allow for meaningful appellate review' in light of the particular circumstances of the case." *United States v. Cohen*, 2022 WL 2314300, at *1 (4th Cir. June 28, 2022) (per curiam) (quoting *High*, 997 F.3d at 190). And, "when a defendant 'present[s] a significant amount of post-sentencing mitigation evidence,

. . . a more robust and detailed explanation [is] required.'" *Cohen*, 2022 WL 2314302, at *1 (quoting *High*, 997 F.3d at 190) (alterations in *Cohen*). In doing so, "a district court is permitted to add to its original, sentencing-phase consideration of the § 3553(a) factors when explaining its compassionate release ruling." *Bethea*, 54 F.4th at 834; *see Kibble*, 992 F.3d at 332.

### IV. Discussion

I first consider whether defendant has presented the Court with an extraordinary and compelling reason for his Motion.

As noted, Hudson asks the Court to modify his sentence and allow him to "seek a [drug] treatment program in the community[.]" ECF 48 at 2. Defendant claims that he is unable to enroll in drug treatment programs at the BOP due to an influx of "[l]ockdowns and staff shortages" at FCI Hazelton. *Id*. at 1. In his view, this constitutes an extraordinary and compelling reason for the Motion. However, Hudson's argument about the conditions of confinement does not establish a stand-alone reason for compassionate release.

Generally, "harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently extraordinary and compelling to warrant compassionate release." *United States v. Hall*, JKB-04-0323, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) (internal quotations and citation omitted). In cases nationally, a defendant's inability to access rehabilitative services is only found to be "extraordinary and compelling" in conjunction with other factors. *See, e.g., United States v. Dones*, JBA-18-2462021, WL 6063238, at *4 (D. Conn. Dec. 22, 2021) ("[T]he Court finds that the extraordinarily punitive conditions and the lack of rehabilitative services available to him, *in conjunction with* his health risks, support a finding of extraordinary and compelling circumstances . . . .") (emphasis added); *United States v. Hatcher*, KPF-18-454. 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021) (holding that the *confluence* of the harsh

15

COVID conditions precluding her from obtaining mental health and rehabilitative services, her pre-existing medical conditions creating a substantial fear and anxiety of death from COVID-19, a viable reentry plan, good behavior, and serving over half of her term of incarcerable created "extraordinary and compelling" reasons worthy of compassionate release) (emphasis added).

In his Motion, Hudson admits that there are many incarcerated people in BOP facilities who are suffering from severe drug addiction and attempting to seek treatment. ECF 48 at 2 (noting that, with respect to drug addiction, "the BOP is overloaded with men like [him]"). Defendant has not established extraordinary and compelling reasons for compassionate release.

Furthermore, "[c]laims that prison officials failed to provide adequate medical care to an inmate . . . sound in the Eighth Amendment." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (citation omitted). Although Hudson "could seek relief for this alleged constitutional violation in an appropriate [civil] lawsuit, '[a] motion for compassionate release is not the proper vehicle for an Eighth Amendment claim, and the Eighth Amendment protections and standards are not applicable to the compassionate release analysis under Section 3582(c).'" *United States v. Langford*, JKB-15-0539, 2022 WL 1443868, at *3 n.3 (D. Md. May 6, 2022) (quoting *United States v. Wiley*, FDW-03-0205, 2021 WL 1234595, at *1 n.1 (W.D.N.C. Apr. 1, 2021)); *see also United States v. Akers*, KHV-4-20089-1, 2022 WL 2438388, at *4 (D. Kan. July 5, 2022) ("Claims which assert potential constitutional violations should be brought—if at all—in a separate civil action, not as part of a motion for compassionate release.").

Even assuming, *arguendo*, that Hudson has demonstrated extraordinary and compelling circumstances for compassionate release, an analysis of the § 3553(a) factors does not support a modification of his sentence.

The coronavirus is not "tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.). Even when a court finds extraordinary and compelling reasons for compassionate release, relief is warranted under 18 U.S.C. § 3582(c)(1)(A) only if appropriate in light of the factors set forth in 18 U.S.C. § 3553(a). *See Bethea*, 2022 WL 17588045, at *5; *High*, 997 F.3d at 186; *see also United States v. Butts*, 2021 WL 3929349, at *2 (4th Cir. Sept. 2, 2021) (per curiam). These factors include: (1) the nature of the offense and the defendant's characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (3) the kinds of sentences available and the applicable Guidelines range; (4) any pertinent Commission policy statements; (5) the need to avoid unwarranted sentence disparities; and (6) the need to provide restitution to victims. *High*, 997 F.3d at 186. The Court must also consider the factors set forth in 18 U.S.C. § 3142(g), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the danger that release would pose to any person or the community. U.S.S.G. § 1B1.13(2).

In my view, a balancing of the § 3553(a) factors readily indicates that a modification in defendant's sentence release is not warranted at this time.

The government argues that defendant is a danger to the community, citing, *inter alia*, the seriousness of his offense and his prior criminal history. ECF 59 at 12-14. There is no doubt that defendant's crime was extremely grave. As the Court observed at sentencing, firearms have "devasted our community." ECF 59-1 at 25. The Court explicitly stated that it "can't allow people to go around with loaded weapons who shouldn't have them." *Id*. at 26. Accordingly, I agree with the government that the nature of Hudson's offense weighs heavily here.

17

Moreover, defendant has a significant criminal history. When he was 16 years old, he was found to have committed a robbery and was committed to the Department of Juvenile Services. ECF 35, ¶ 28. Within the next five years, Hudson was convicted of seven drug-related crimes, *id*. ¶¶ 33-39, four of which did not score points. *Id*. ¶¶ 33-36. Four were felony drug offenses. *Id*. ¶¶ 35, 37-39.

A review of Hudson's criminal history makes plain that the criminal justice system initially treated him with leniency. *See, e.g., id*. ¶¶ 35, 38. Eventually, he received serious sentences. Neither approach worked in leading Hudson to change his conduct. Rather, he continued to engage in criminal activity, which culminated in his federal prosecution in this case. And, defendant committed the offense at issue here while on parole. *Id.* ¶ 41.

The Court remains troubled by the severity of defendant's offense of conviction, coupled with his criminal history and his repeated failure to conform his conduct to societal expectations. In my view, defendant's sentence of incarceration remains appropriate. Put another way, I am persuaded that the § 3553(a) factors militate against a modification of Hudson's sentence, as this is not the "grievous case[]" warranting compassionate relief. *McCoy*, 981 F.3d at 287.

Finally, to the extent that Hudson's Motion contains a request for home confinement, any request for the conversion of a sentence of imprisonment to a sentence of home confinement must be submitted to the BOP, and not to this Court. Section 3624(c) of Title 18 of the United States Code is the only statute that authorizes the transfer of an inmate from prison to home confinement. That section specifically provides that "[t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of ten percent of the term of imprisonment of that prisoner or six months." 18 U.S.C. § 3624(c)(2). However, this authority resides with the BOP, and not with the courts.

Moreover, although § 12003(b)(2) of the CARES Act states that, during the COVID-19 emergency, "the director of the Bureau [of Prisons] may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement," this provision does not alter the exclusive authority of the BOP to make this determination.  *See United States v. Baker*, No. l:10-cr-69-MR-1, 2020 WL 2430945, at *1 (W.D.N.C. May 12, 2020) (stating that authority to grant such relief rests solely with the Director of the Bureau of Prisons); *United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (finding "defendant must seek home confinement through the BOP's administrative system"); *United States v. Johnson*, Crim. No. JKB-14-0356, 2020 WL 1929459, at *2 (Apr. 21, 2020) ("It is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement, pursuant to 18 U.S.C. § 3624(c).").  Therefore, this Court does not have the authority to place the defendant in home confinement.  This request must be made through the BOP's administrative system.

## V. Conclusion

Even if Hudson were eligible for compassionate release, a modification of defendant's sentence is not warranted at this time, in light of the factors set forth in 18 U.S.C. § 3553(a).  Consequently, the Court denies the Motion, without prejudice.

An Order follows, consistent with this Memorandum Opinion.

Date:  May 10, 2023                                           /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge

19